**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | | |
|---|---|---|
| **LAWRENCE WILLIAMS** | * | **CIVIL ACTION NO. 13-0478** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **ANTONIO JOHNSON** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the court is a motion for summary judgment [doc. # 30] filed by defendant Antonio Johnson. Pursuant to Standing Order 3.311 and 28 U.S.C. § 636(b)(1)(B), the District Court referred the motion to the undersigned magistrate judge for report and recommendation. For reasons explained below, it is recommended that the motion for summary judgment be DENIED, and that the matter be referred to the assigned magistrate judge for an evidentiary hearing.

**Background**

On March 5, 2013, Lawrence Williams, an inmate in the custody of Louisiana's Department of Public Safety and Corrections ("LDOC"), filed the instant pro se civil rights complaint under 42 U.S.C. § 1983 against Major Antonio Johnson, a high-ranking officer at the Madison Parish Detention Center ("MPDC") where Williams is currently housed. Williams complains that he is exposed to unreasonable levels of environmental/second hand tobacco smoke ("ETS") at the MPDC facility. He sued Major Antonio Johnson requesting an immediate transfer to a non-smoking facility, plus compensatory damages for the injury he sustained as a result of his ETS exposure.

On August 5, 2013, the court determined that plaintiff sufficiently pleaded a cause of

action, and ordered service on the sole named defendant. (Aug. 5, 2013, Mem. Order [doc. # 20]). Johnson answered plaintiff's complaint on November 18, 2013. [doc. # 27]. After the close of discovery, Johnson filed the instant motion for summary judgment [doc. # 30]. Following delays for briefing, the matter is now before the court.

**Summary Judgment Principles**

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2511 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*.

In evaluating the evidence tendered by the parties, the court must accept the evidence of

the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "The court *need* consider only the cited materials, but it *may* consider other materials in the record." Fed.R.Civ.P. 56(c)(3) (emphasis added). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure[1] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

**Analysis**

Johnson contends that 1) plaintiff failed to exhaust available administrative remedies before filing suit; and 2) plaintiff's allegations do not rise to a level sufficient to support a constitutional violation. The court will address defendant's arguments in turn.

1) Exhaustion

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of

[1] I.e., beyond doubt.

this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory, and is required even where the relief sought cannot be granted by the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S.Ct. 2378, 2382-83 (2006) (citations omitted). All "available" remedies must be exhausted, whether speedy and effective, or not. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002). "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v. Kukua*, 342 Fed. Appx. 933, 934 (5th Cir. Aug. 20, 2009) (unpubl.) (citing *Woodford v. Ngo*, 548 U.S. at 89-93, 126 S.Ct. 2378)). An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement. *Id*. Furthermore, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter, supra* (citation omitted). Exhaustion also applies to claims brought against defendants in their official and/or individual capacities. *See e.g., Williams v. Henagan*, 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas*, 76 Fed. Appx. 564 (5th Cir. Sept. 29, 2003) (unpubl.).

Under Louisiana law, the Department of Public Safety and Corrections and each sheriff is authorized to adopt an administrative remedy procedure at each of their institutions. La. R.S. § 15:1171. The administrative remedy procedure is intended to resolve complaints and grievances that arise while the offender is in the custody of, or under the supervision of the department or sheriff. *Id*. The procedure encompasses complaints and grievances for monetary, injunctive, declaratory, or other relief stemming *inter alia* from conditions of confinement, personal injuries, and medical malpractice. *Id*. These administrative procedures, when promulgated, provide the

offender's exclusive remedy – to the extent that federal law permits. *Id*. Finally, "status as an 'offender' is determined as of the time the basis for a complaint or grievance arises. Subsequent events, including posttrial judicial action or release from custody, shall not affect status as an 'offender' . . ." La. R.S. 15:1171(D).

In support of his motion for summary judgment, Johnson adduced an unauthenticated copy of a document entitled "Administrative Remedy Procedure," ("ARP") which he suggests was in effect at the MPDC during the relevant period. *See* MSJ, Memo, pgs. 3-4, MSJ, Exh. A. The otherwise unidentified ARP purports to establish a three-step grievance procedure that must be completed within a 90 period. *Id.*

Johnson did not adduce any affirmative evidence to establish that Williams did not comply with the grievance process. Rather, Johnson emphasizes that Williams failed to allege in his complaint and deposition that he had exhausted his administrative remedies. However, "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216, 127 S. Ct. 910, 921 (2007). In any event, however, Williams *did* allege in his complaint that he exhausted all three steps of the ARP. (Compl., pg. 3). He also testified at his deposition that he exhausted every step of the ARP. (Williams Depo., pgs. 10-11; MSJ, Exh. D). Finally, in response to defendant's discovery requests, Williams adduced copies of three grievances wherein he purported to grieve his ETS claim over a three month period from October-December 2012. *See* doc. # 29.

In sum, the court finds that defendant has not established beyond peradventure that plaintiff has failed to exhaust available administrative remedies.

2) <u>ETS and the Eighth Amendment</u>

In *Helling v. McKinney*, the Supreme Court held that prison officials may violate the Eighth Amendment's prohibition against cruel and unusual punishment by exposing inmates to excessive levels of ETS. *Helling v. McKinney*, 509 U.S. 25, 33-35, 113 S.Ct. 2475, 2481-482 (1993) (emphasis added). The Court also formalized a "two-prong test" to determine whether an inmate's exposure to ETS resulted in a transgression of constitutional proportions. *See Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir. 2001) (citing *Helling, supra*). "First, a prisoner must prove objectively that he is "being exposed to *unreasonably high levels* of ETS . . ." *Id*. (emphasis in original). Second, the prisoner must show that prison authorities were deliberately indifferent to his plight - the subjective component. *Id*.

a) <u>Objective Element</u>

Under *Helling*'s objective prong,

> determining whether [a prisoner]'s conditions of confinement violate the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Helling, supra*. (emphasis in original).

As an initial matter, since August 15, 2009, Louisiana, via the Louisiana Smokefree Air Act, has banned smoking in public facilities, including any state, local, or private correctional facility. La. R.S. 40:1300.256(B)(14). In so doing, the legislature found and determined that

> it is in the best interest of the people of this state to protect nonsmokers from involuntary exposure to secondhand smoke in most indoor areas open to the public, public meetings, restaurants, and places of employment . . . Therefore, the legislature hereby declares that the purpose of this Part is to preserve and improve the health, comfort, and environment of the people of this state by limiting

exposure to tobacco smoke.

La. R. S. § 40:1300.252.

The Louisiana Smokefree Air Act evidences society's increasing intolerance to ETS. Furthermore, in a June 2006 report, the United States Surgeon General concluded that there are *no safe levels of exposure to second hand smoke*.[2] This court, and others, have taken judicial notice of the Surgeon General's report. *See Murrell v. Casterline*, 2008 WL 822237, *1 (5th Cir. March 25, 2008) (unpubl.) (noting that the magistrate judge in the lower court took judicial notice of such report in concluding that plaintiff had met first prong of *Helling* on summary judgment); *Gauthier v. Anderson*, 2010 WL 2718980 (W.D. La. Apr. 21, 2010).[3]

Here, Williams declared under penalty of perjury that he has been incarcerated at the MPDC since May 2012, and forced to inhale second hand smoke 24 hours per day. (Decl. of L. Williams [doc. # 6]). Furthermore, he is not scheduled to be released until 2022. (Williams Depo., pg. 6; Def. MSJ, Exh. D). Williams also testified that out of the 120 or so inmates in his dormitory, approximately 110 of them smoke in the bunk areas and in the television room. *Id.*, pgs. 11-12. At any one time, approximately one-half of the inmates in the dormitory are smoking. *Id.*, pg. 14. Williams further explained that smoke was present in the dormitory every day. *Id.*, pg. 13. The ETS exposure has caused Williams to suffer watering and itchy eyes, sinus problems, and dizziness. *Id.*, pg. 9. Williams fears that continued exposure will more

---

[2] *See* The Health Consequences of Involuntary Exposure to Tobacco Smoke: A Report of the Surgeon General-Executive Summary, available at http://www.surgeongeneral.gov/library/secondhandsmoke/report/executivesummary.pdf.

[3] Pursuant to Rule 201, a court may take judicial notice of an adjudicative fact that is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources who accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Moreover, judicial notice may be taken at any stage of the proceeding. Fed. R. Evid. 201(f).

significantly impact his health. *Id.*[4]

Upon consideration of the foregoing, the undersigned finds that plaintiff has adduced evidence sufficient to create a genuine dispute of material fact regarding the objective component of the *Helling* test, i.e. whether he was exposed to unreasonably high levels of ETS.

b) Subjective Element

To satisfy *Helling*'s second, or subjective, prong, the plaintiff must show that prison officials were deliberately indifferent to his plight. *Helling, supra*. "[D]eliberate indifference requires a finding of 'obduracy and wantonness, not inadvertence or error in good faith.'" *Callicutt v. Anderson*, 48 Fed. Appx. 916, *2 (5th Cir. Sept. 11, 2002) (unpubl.) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Furthermore,

> a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

In evaluating deliberate indifference to ETS, the court should consider factors such as the adoption of a smoking policy, the administration of that policy, and the realities of prison administration. *Callicutt, supra* (citing *Helling*, 509 U.S. at 36-37).

---

[4] At his deposition, Williams admitted that he had not yet incurred significant health problems as a result of ETS exposure. (Williams Depo., pgs. 9-10). Johnson argues that, without physical injury, Williams cannot establish a claim for intentional infliction of emotional distress – apparently under Louisiana law. *See* Def. MSJ Memo., pg. 7 (citing decisions from the Louisiana Supreme Court). Williams' suit, however, seeks vindication of his constitutional rights under federal law. Moreover, under federal law, a prisoner need not establish that exposure to ETS *already* has harmed his health; rather, it suffices if he has been exposed to ETS for a sustained period, and that his future health will be harmed by the continued exposure. *Murrell v. Chandler*, 109 F. App'x 700, 701 (5th Cir. 2004) (unpubl.) (*citing inter alia, Rochon v. City of Angola*, 122 F.3d 319, 320 (5th 1997)).

In this case, Johnson adduced evidence that, in compliance with the State of Louisiana Department of Public Safety Corrections Field Operations Manual, the MPDC prohibits smoking inside of public buildings, and outdoors by inmates between sunset and sunrise. (Aff. of Antonio Johnson; MSJ, Exh. B). Johnson further averred that the MPDC enforces the foregoing policy. *Id*.

Williams, of course, submitted evidence that the MPDC does *not* enforce the state's prohibition against smoking inside of buildings. *See* discussion, *supra*. Furthermore, Williams stated that in May 2012, he wrote several requests to Major Antonio Johnson asking to be moved to a smoke-free dormitory, or to a facility that does not allow smoking in the dormitories. (Williams Decl. [doc. # 6]). In January, 2013, Williams advised Johnson that he was a non-smoker, and that second-hand smoke was endangering his health. *Id*. Johnson, however, still refused to transfer him. *Id*.

In a grievance dated December 12, 2012, Williams wrote to Johnson that he continued to experience severe sinus trouble and difficulty breathing as a result of exposure to second hand smoke. (Inmate Request Form [doc. # 28]). He also questioned why the correctional officers were not enforcing the smoking rules. *Id*.

Construing the foregoing evidence in the light most favorable to the non-movant, the undersigned finds that plaintiff has created a genuine dispute as to whether Major Johnson was deliberately indifferent to Williams' exposure to ETS. Although Johnson stated that the MPDC complies with the State's policy against smoking in buildings, plaintiff declared under penalty of perjury and/or oath that the MPDC is not enforcing that policy, and that he has brought the issue to the attention of Major Johnson, to no avail.[5] Courts regularly deny summary judgment under

---

[5] Defendant does not contest that he has the authority to redress plaintiff's complaints.

like circumstances. *See Samuels v. Arnold*, Civil Action No. 11-0201, 2013 WL 2404008 (W.D. La. May 31, 2013) (and cases cited therein); *Perkins v. Terrell*, Civ. Action No. 08-1906, 2010 WL 5488234 (W.D. La. Dec. 6, 2010), *report and recommendation adopted,* 08-1906, 2011 WL 13466 (W.D. La. Jan. 4, 2011).[6]

**Conclusion**

For the above-assigned reasons,

IT IS RECOMMENDED that the motion for summary judgment [doc. # 30] filed by defendant Antonio Johnson be DENIED.

IT IS FURTHER RECOMMENDED that the matter be referred to the assigned magistrate judge to hold an evidentiary hearing (to include all witnesses and evidence to be presented by all parties), and thereafter, to issue findings to the court, via report and recommendation.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

[6] To the extent that defendant insists on plaintiff presenting witnesses to corroborate his testimony, plaintiff has offered to do so. *See* Williams Depo., pgs. 16-17; Pl. M/Reconsideration [doc. # 38]. For purposes of the instant motion, however, plaintiff's declaration and testimony will suffice. However, plaintiff should endeavor to secure the presence of his corroborating witnesses at the evidentiary hearing. The court will instruct plaintiff on this procedure when the matter is set for hearing.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 30th day of April 2014.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE